## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**LILBURTIE WILLIS,**            **CIVIL CASE NUMBER: 5:23-cv-683**
**PETITIONER,**

 **v.**

**RICKY DIXON, SECRETARY OF**
**DEPARTMENT OF**
**CORRECTIONS,**
**RESPONDENT.**
_____/

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

Comes now the Defendant, LILBURTIE WILLIS by and through his undersigned Attorney, and files his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 and as grounds states the following:

## PROCEDURAL HISTORY

1. Wills is incarcerated at Blackwater River Correctional Facility, a Florida state prison, located at 5914 Jeff Ates Road, Milton, Florida 32583-0000.

2. The State Attorney representing Seminole County charged Willis with one count of Attempted First-Degree Felony Murder and one count of Robbery with a Firearm in case 2015-3131-CF-A on November 28, 2015, in Seminole County, which is in the Middle District of Florida.

3. Willis pled not guilty. The State never offered him a plea. He proceeded to

jury trial, where his counsel failed to do any opening statement at all. Willis did not testify at trial. And his counsel did not call any witnesses on his behalf, did not admit any evidence, and decided not to cross-examine numerous prosecution witnesses.

4.  On September 14, 2016, the jury convicted him of both charges; the court later sentenced him to mandatory life in prison on the Robbery charge, and 25 years in state prison on the Attempted Felony Murder charge to run concurrent.

5.  At trial, Assistant Public Defender Stuart Bryson represented Willis.

6.  Defendant appealed the judgment of conviction and sentence to the Fifth DCA, where his court-appointed appellate counsel filed a so-called "Anders" brief that claimed there were was not one colorable appellate issue. The Fifth DCA affirmed per curiam without opinion on September 5, 2017, in Case No. 5D16-3741.

7.  The Petitioner properly filed his original motion for post-conviction relief on December 3, 2018, pursuant to Rule 3.850.The Petitioner has not filed any other petitions, applications, or other motions for relief. On November 9, 2019, the trial granted an evidentiary hearing on ground 5, regarding the failure to file a motion to suppress, and the court entered a summary denial as to all other grounds. After conducting an evidentiary hearing, the court later entered an order denying his claim on ground 5. Willis appealed to the Fifth DCA and the court affirmed the

ruling in per curiam without opinion on November 21, 2023, in Case No. 5D22-2520.

8.  As for the grounds in support of this petition, Willis asserts that he was denied effective assistance of counsel as detailed herein, as guaranteed by the 6th and 14th Amendments to the Constitution of the United States of America, and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984).

9. Willis asserts that his claim is timely as it was properly filed within the one-year time period under § 2254. His direct appeal was affirmed on September 5, 2017; and when 90 days are added to that, the one-year clock on his federal habeas stopped on December 3, 2018, when he filed his post-conviction motion in 2015-3131-CF-A.10. He furthers contends that he has satisfied the exhaustion requirement for the claims brought here, as they were fairly presented in his post-conviction motion and the appeal of the denial of the motion.

## STANDARD OF REVIEW

This Court's review of Willis's claim is of course circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996).  And pursuant to § 2254(d), this Court may grant habeas relief from a state court judgment if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States;

or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

## APPLICABLE LAW

The Sixth Amendment affords an accused the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

In assessing whether a particular counsel's performance was constitutionally deficient, courts afford a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.* at 689. To show prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A probability that is reasonable is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner cannot meet one of *Strickland's* prongs, a court need not address the other prong. *See, e.g., Dingle v. Sec'y, Fla. Dep't of Corr.,* 480 F.3d 1092, 1100 (11th Cir. 2007).

## FACTS IN SUPPORT OF PETITION

The following facts were elicited at trial through the State's witnesses. On

October 22, 2015, armed guard Marcos Rivera and his partner stopped their Loomis courier truck in front of a Publix to collect $11,200 in cash inside the store, a routine stop. (TT[1] 49, 60-61). Rivera entered the store by himself with a bag for the money, while his partner waited in the truck. (TT 49, 62). Inside, a Publix employee gave him the cash, and he headed out to exit. Id. As Rivera had entered the store, store video later showed a gold Nissan Maxima had driven up and stopped in front of the Publix. (TT 49). A man got out of the rear passenger side door and walked into the foyer area of the store. (TT 49). The store video shows the man sit down on a chair and start to talk on a white cellular phone. (TT 50, 65). As Rivera attempted to exit the foyer, the man gets up and fires three shots from a firearm, striking Rivera in the head with two shots. (TT 50, 66-67). The man then takes the money bag, runs out the store, and gets in the same Maxima waiting outside, which then takes off. (TT 87-89).

The police arrived and spoke with Rivera, who provided a partial description: suspect had black pants, a ball cap, and khaki colored shirt. (TT 51, 66-67). The police watched the store surveillance video, noticed that the suspect had a lean build, trimmed beard, and wore a Chicago Bulls hat, but they could not see the suspect's face. (TT 51, 207, 212).  A short time later, a citizen approached a police officer and reported an abandoned gold Nissan Maxima parked in the

---

[1]  "TT" is the Trial Transcript from the Record on Appeal from the direct appeal, Case No. 5D16-3741.

apartment complex behind the Publix. (TT 126, 130, 131). The police secured the vehicle, as it matched the description of the getaway car; and, it also matched the license tag, as a civilian witness was able to record the license tag of the Maxima. (TT 128).

The Maxima had been reported stolen two days earlier by Jai Danielle Smith. (TT 129). She claimed that the she parked her car in front of a nearby convenience store, ran in, and someone stole it by the time she came out. (TT 146). Detective Hyer was assigned to investigate the car theft. (TT 146-149). He watched the store video and recognized a man inside the store right before the car theft, who he thought might have taken the car: Lilkurk Willis, who was Lilburtie Willis's brother. Id. Police then logged into Lilkurk's Facebook page and saw a photo of Lilkurk wearing the exact same colored Chicago Bulls cap that the robbery suspect wore. (TT 53). Then police made a photo lineup with Lilkurk's photo, and showed it to Rivera, who did not make an identification. (TT 88). Police still considered Lilkurk their suspect.

Police stationed detectives outside Lilkurk's apartment to conduct surveillance. (TT 160-162, 208). The next morning a car pulled into the complex. (TT 54, 162). Officers saw a black male with a thin build wearing black shoes exit the car and walk toward and enter Lilkurk's apartment. (TT 54, 122-123, 162). On his way out of apartment complex, police stopped the man, who turned out to be

Lilburtie Willis. (TT 54, 163). Police noticed the black shoes, which he was now

carrying, were similar to the sneakers the robbery suspect wore. (TT 54, 122-123,

162). Police asked him if they could search his car. (TT 55, 215). He said no,

refusing consent. Id. Police then detained him and waited for a K9 to arrive to

conduct a so-called "free air sniff."  Id. The K9 unit arrived, and the K9 apparently

alerted to small amount of marijuana and seeds in the center console. Id. Based on

that, police then searched the entire vehicle and recovered a white cell phone and

shorts containing five thousand dollars in cash, where one of the bills had a Publix

stamp on it. Id. Police arrested Lilburtie. Lilburtie's fingerprint was later recovered

on the Maxima's rear side door handle. (TT 272).

### The Trial

As the case proceeded to trial, his trial attorney did not file any motion to

suppress the unconsented to search of the vehicle, where the K9 alerted. After the

State's opening statement, detailing the evidence against Lilburtie, which was

mostly circumstantial evidence, Willis's attorney chose not to do any opening

statement, telling the court, and the jury, he would reserve. (TT 56). However, he

never did an opening statement later either.

The issue of Rivera's in-court identification would be the lynch

pin of the State's case. Rivera had never identified Willis prior to trial. However,

during Rivera's direct testimony, he identified Willis who was of course sitting at

the defense table. (TT 66-67). His trial attorney neither objected to this in-court identification nor tried to suppress it. Also, while trial counsel briefly crossed Rivera, he failed to impeach, or mention to, him about his factual inaccurate direct testimony that shooter fired four times, when it was undisputed the gunman fired three times.

The State continued calling its witnesses. One witness from Estonia was allowed to testify through Skype. And another witness who lived locally was also allowed to testify through Skype. (TT 136-137). Indeed, trial counsel did not object to the local witness Jai Danielle Smith testifying by skype. Also, trial counsel decided not to cross examine certain witnesses.

After the State rested, trial counsel made a two sentence motion for judgment of acquittal, not citing any case law, facts in support of—even stating what the state's burden (prima facie) was, saying simply the State had not proved identification. (TT 284). The court denied it. Id. Then, without doing an opening statement, trial counsel rested in front of the jury. At the second JOA argument, counsel merely said, "Same argument." (TT 284-293). The Defendant was literally on trial for his life, as a conviction of armed robbery meant an automatic life sentence as a prison release career criminal.

## LEGAL GROUNDS

I.  **Counsel was ineffective for failing to do any opening statement, either at the beginning of the trial or after the State rested**

8

The court's denial of his effective assistance of counsel claim here was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. For unexplained reasons, counsel decided to waive opening statement "for later," as he told the court and jury. A decision Willis was neither aware of nor did he consent to. In some cases, the defense strategically reserves opening to hear the State's case before doing their after the State's rests. That never happened here. In a trial where a man faced mandatory life in prison, his lawyer did no opening statement. His counsel ceded way too much ground to the State from the start.

An opening statement would challenge the State's case, encourage jurors to hold the State to its historical burden, highlight the State's failure in opening to mention their star witness had failed to identify the Defendant in a lineup, and carry out their sacred duty of deciding if the State has proved all the elements. Instead, counsel deprived the jury as to what its defense would be. Indeed, counsel never did an opening, and he never put on a case in chief. In fact, opening statement would be the only time the Defense could lay out a defense, even if it was just reminding jurors of the State's high burden.

This prejudiced the Defendant right from the start of the case. Jurors are quick on first impressions. And here, there is a grave danger a juror might think the

State's evidence is so strong and powerful, Willis had no defense to even place in the jurors' minds.

Courts have rejected the claim that waiving opening statement is a reasonable tactic, especially when no opening was ever done after the State rests. *Stouffer v. Reynolds,* 214 F.3d 1231 (10th Cir. 2000); *Hammonds v. United States,* 425 F.2d 597 (D.C.C. 1970); *Crisp v. Duckworth,* 743 F.2d 580 (7th Cir. 1984); *Jones v. Jones,* 988 F. Supp. 1000 (E.D. La 1997). But the real issue is the trial court erred by not having an evidentiary hearing on this issue to flesh out whether counsel blundered or was deliberately not doing any opening as a tactic.

Generally, the claim that a trial counsel's decision was tactical—like not cross examining a witness or failing to do an opening statement—can only be decided after an evidentiary hearing that determines the reasonableness of such a critical omission. *Thomas v. State*, 634 So. 2d 1157 (Fla. 1st DCA 1994) (reversing trial court for summary denying Rule 3.850 motion where trial court found attorney's actions or failure to act were "trial tactics."); *Lebron v. State,* 100 So. 3d 132 (Fla. 5th DCA 2012).

II.     **Willis was denied effective assistance of counsel by counsel's failure to object to the victim's in-court identification**

Rivera's identification of this Willis was the crux of the State's case. After not objecting, or trying, to suppress the in-court ID by Rivera, counsel then briefly cross-examined him. In so doing, incredibly, counsel never brought out that Rivera

had in fact failed to make any identification in two different lineups. One lineup

contained Lilkirk's photo, and a separate lineup contained Lilburtie's photo. This

critical information could have been elicited in cross. In fact, there is no reasonable

rationale for not bringing out that Rivera failed to identify Lilburtie just a day after

the robbery. Moreover, an objection to the in-court ID would have triggered a voir

dire of the witness outside of the jury's presence, in which the State would have to

prove there is independent evidence from which Rivera can make a reliable

identification, and not one tainted by the media.

Courts have long held that failure of counsel to impeach a prior inconsistent

identification is ineffective. *Berryman v. Morton,* 100 F.3d 1089, 1099 (3d Cir.

1996) (finding deficient performance where counsel failed to raise the victim's

prior inconsistent identification testimony, given that "[t]he reliability of this

victim's uncorroborated identification of [the defendant] cut[ ] directly to the heart

of the only evidence against [the defendant]"); *Tomlin v. Myers,* 30 F.3d 1235,

1238 (9th Cir. 1994) (finding deficient performance where counsel failed to

challenge an eyewitness's in-court identification in a case that "hinge[d] on an

eyewitness's testimony"); *Nixon v. Newsome,* 888 F.2d 112, 115 (11th Cir. 1989)

(finding deficient performance where counsel failed to confront the prosecution's

star witness with inconsistent statements, thus "sacrific[ing] an opportunity to

weaken the star witness's inculpatory testimony"); *Blackburn v. Foltz,* 828 F.2d

1177, 1183 (6th Cir. 1987) (finding deficient performance where counsel failed to impeach an eyewitness with previous inconsistent identification testimony when "weakening [the witness's] testimony was the only plausible hope [the defendant] had for acquittal").

To be clear, Willis is not arguing that his trial counsel failed to cross-examine Rivera as to not identifying him in a line up or at all prior to trial. Rather, Willis asserts that by failing to object to the strongest evidence the State presented, it did not subject this in-court identification to all of the legal hurdles necessary for a trial court to accept it: by objecting the State must then show a "witness [has an] independent recollection of the offender at the time of the crime,' uninfluenced by any intervening illegal confrontation." *Fitzpatrick v. State,* 900 So. 2d 495, 519 (Fla. 2005) (quoting *Edwards v. State,* 538 So. 2d 440, 442 (Fla. 1989)).

In ruling on an objection to an in-court identification, one of the factors court's consider is a failure to identify the defendant on a prior occasion. *Id.* "It is the State's burden to demonstrate by clear and convincing evidence that the courtroom identification had an independent source[.]" *Id.* In Fitzpatrick**,** the victim's testimony at trial demonstrated that he had an independent recollection, as the victim testified that the defendant had been in his house for ten to fifteen minutes and conversed with him. *Id.*

Whereas here, the encounter lasted a few seconds where the victim was shot multiple times. And, in an effort to justify its summary denial, without any legal analysis of the factors in *Fitzpatrick,* the trial court claimed in a conclusory manner that any objection to identification would have been overruled.

Surely, the Defendant was prejudiced, because Rivera's ID of Willis was the sine qua non of the State's case, tying all the circumstantial evidence together. There was no other direct evidence. *Goldman v. State,* 575 So. 3d 274 (Fla. 4th DCA 2011); *Lebron v. State,* 100 So. 3d 132 (Fla. 5th DCA 2012). Thus, the court's denial of Defendant's effective assistance of counsel claim here was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

III.    **Trial counsel was ineffective for failing to cross examine numerous state witnesses**

Trial counsel was ineffective for failing to cross examine the following state witnesses: auto theft Detective Timothy Hyer, Jai Danielle Smith, Roberta Dean, Jason Spidell, and Jose Bosch. Rejecting claims that such a decision was tactical, courts have found trial counsel ineffective for failing to cross examine prosecution witnesses. *Higgins v. Renico,* 470 F.3d 624 (6th Cir.2006); *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir. 2001) (concluding ineffective assistance of counsel where, among other things, counsel's "failure to investigate prevented an effective challenge to the credibility of the prosecution's only eyewitness").

In its order summarily denying this claim, the trial court went to great lengths to explain why no cross examination was a reasonable tactic for each witness counsel failed to cross-examine, or would not have had any effect on the outcome. But coupled with a failure to do an opening, and object to the in-court identification, this failure here cannot be viewed in a vacuum.

Further, a cross-examination of key witnesses could have shored up, and advanced, the Defendant's failure-to-prove-ID defense. For instance, auto theft Detective Hery identified Willis's brother Lilkirk as the person who stole the subject Maxima. And police identified the Chicago Bulls cap worn in the robbery in Lilkirk's facebook photos. A cross-examination of their similarities in appearance, and that Lilkirk was a suspect too, could have aided the defense.

In addition, Smith was allowed to testify through skype and was not crossed. Smith could have been crossed as to why she left a spare set of keys in her car, and the car thief knew exactly where and how to get them just as she left her car open and ran into the store, raising the suspicion that she might have known more.

Bosch was the Publix employee who handed over the cash. Counsel could have brought out that numerous black males enter and leave the store daily. Roberta Dean was used to show that Lilburtie told the booking officer he was unemployed. A simple cross-examination could have brought out the unemployed

people regularly make money as independent contractors, family gifts, and other legal ways. Spidell was Lilkurk's probation officer. An effective cross-examination of him could point out that he cannot be sure that Lilkurk is not the suspect.

The failure to cross-examine five State witnesses, coupled with the failure to do any opening statement, gives the impression to the jury that the defense had quickly surrendered right from the start. He could have brought out that numerous black males enter and leave the store daily. Roberta Dean was used to show that Lilburtie told the booking officer he was unemployed. A simple cross examine could have brought out the unemployed people regularly make money as independent contractors, family gifts, and other legal ways. Spidell was Lilkurk's probation officer. An effective cross of him could point out that he cannot be sure that Lilkurk is not the suspect.

Rejecting a claim that such a decision was tactical, courts have found counsel ineffective for failing to cross examine key prosecution witnesses. *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006); *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir. 2001) (concluding ineffective assistance of counsel where, among other things, counsel's "failure to investigate prevented an effective challenge to the credibility of the prosecution's only eyewitness"). Willis asserts he did not consent to this tactic and requests an evidentiary hearing to demonstrate why reasonable criminal defense attorney would have crossed examined these

witnesses. As such, the court's denial of the effective assistance of counsel claim

here was contrary to, or an unreasonable application of, clearly established federal

law as determined by the Supreme Court of the United States.

IV.    **Willis was denied effective assistance of counsel by counsel's failure to move to suppress the evidence recovered in the police's search of the vehicle, after Willis expressly refused consent, and police later said they had probable cause to search because the K9 alerted to a small amount of marijuana**

Here, counsel failed to file a motion to suppress challenging the police's

warrantless search of the subject vehicle that Willis was seen exiting, where  he

refused consent for the search. At trial, he failed to object to admission of the

evidence recovered from that search, namely the $5000 cash and the white cell

phone. Of course the police can make a valid investigatory stop absent probable

cause for an arrest, provided that the officer's decision is based on specific,

articulable facts which warrant the investigative stop. *Terry v. Ohio,* 392 U.S. 1,

21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 906 (1968). And the decision whether

to bring a motion to quash arrest and suppress evidence is considered trial strategy,

and trial counsel enjoys the strong presumption that failure to challenge the

validity of the defendant's arrest or to move to exclude evidence was proper.

*People v. Rodriguez,* 312 Ill. App.3d 920, 925, 245 Ill. Dec. 613, 728 N.E.2d 695

(2000). To overcome that presumption, the defendant must demonstrate a

reasonable probability that the motion would have been granted and that the

outcome of the trial would have been different. *Rodriguez,* 312 Ill. App.3d at 925, 245 Ill. Dec. 613, 728 N.E.2d 695. Reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

In this case, counsel could have challenged the "free air" dog sniff,, how long did Willis wait, was he detained too long, how such a small amount of marijuana actually alerted the dog. Considering how damaging the evidence was that recovered from the vehicle, and that the dog drug search is just a pretext to hold and detain Willis and a pretext to search the vehicle—as we all know this was not a drug case, and the K9 was not sniffing for cash, and that Willis refused consent to search, it is hard to justify not filing a motion to suppress or at least preserving the issue for appeal. The damaging evidence recovered obviously prejudiced Willis: $5000 cash with a Publix stamp on one of the bills.

At the 3.850 evidentiary hearing, Willis's trial counsel testified that he did not file a motion to suppress because he believed Willis did not have standing to challenge the search. (R[2] 498-499). This belief was an incorrect statement of the law, as the post-conviction trial court noted in its written order, citing *Roberson v. State,* 566 So. 2d 561 (Fla. 1st DCA 1990) and *Strong v. State,* 284 So. 3d 597 (Fla. 5th DCA 2019). (R 603).

---

[2] Citations to R are from the record on appeal in the direct appeal  in case 5D22-2520.

This was a fateful mistake, which constituted deficient performance under *Strickland*; because, the discovery of the cash and cellphone in the vehicle was the lynchpin of the State's case against Willis. *Madison v. State,* 278 So. 3d 921 (Fla. 5th DCA 2019) (holding counsel was ineffective for failing to file motion to suppress where counsel failed to explain at hearing why she was of legal opinion that a motion to suppress would have unsuccessful ).

Willis had refused consent to search the vehicle. (R 525). Clearly, he had standing to challenge the vehicle search. (R 542-557). Willis asserted the drug dog search was a pretext, an end around for a search warrant. The vehicle could have been easily secured while the search warrant was obtained. This was not a drug investigation, as Detective Van Cleave testified at the post-conviction hearing, and he testified police had no probable cause to search the vehicle before the K9 showed up. (R 520). Willis claimed he waited 45 mintues for the K9 to arrive on the scene, thereby exceeding the bounds of reasonableness. (R 553); *Jones v. State*, 187 So. 3d 346 (Fla. 4th DCA 2016) (holding K9 drug sniff of vehicle was unconstitutional and unreasonable where police had no legal grounds to justify search when stop began as traffic stop).

In addition, the issue is the trial court trying to limit the evidentiary hearing to a particular factual issue. In other words, yes, the court granted an evidentiary hearing on this ground for failure to file a motion to suppress. (R 602-

18

604). But the court tried to frame the exact contours of the hearing to one discrete

factual issue regarding this claim. Id. That was, whether the K9 was reliable or not

based on his training records. Id.

The trial court should not be able to grant a hearing and then contain it to

one, discrete factual issue. A post-conviction defendant, like Willis, should be able

to present all evidence that is relevant to whether a motion to suppress would have

been granted and whether his counsel was ineffective on that ground; and the court

should consider all such evidence in its analysis. The trial court tried to explain this

way by claiming that even if the hearing was not limited to just the K9's reliability,

it would have found the warrantless, unconsented vehicle search legally justified.

(R 604). Yet, the court's analysis was dead wrong, as it conflated a legally justified

investigatory stop of Willis's person as valid grounds to justify the vehicle search.

(R 602-604). Willis was not inside the vehicle when police stopped him; he was

walking toward the car. (R 542-557). Willis did not have to show that his motion to

suppress would definitely have been granted; rather, he must show he had a viable

motion that had a good chance to have been granted. *Madison* at 928. And when

one faces a mandatory life sentence, and the State is not offering a plea, a viable

motion to suppress may be an accused's only hope. Based on the above, the court's

denial of his effective assistance of counsel claim here was contrary to, or an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

## <u>CONCLUSION</u>

In sum, trial counsel failed to subject the State's case to adversarial testing, and when counsel's errors are viewed cumulatively, this Court can presume prejudice under *United States v. Cronic*, 466 U.S. 648, 659 (1984). In *Cronic*, the Supreme Court found that "if counsel fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself unreliable." More specifically, *Cronic* held that prejudice could be presumed when counsel fails to meaningfully challenge the prosecution's case. *Id.*

Whereas in *Strickland*, to satisfy the prejudice prong, there has to be a reasonable probability that but for counsel's specific error the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see State v. Miller*, 288 So. 3d 1281 (5th DCA 2020) ("Decided the same day as *Strickland*, ...*Cronic* ... outlined three narrow circumstances under which the prejudice prong of Strickland will be presumed: (1) where the defendant is completely denied counsel at a critical stage of trial; (2) where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) where counsel is

called upon to render assistance under circumstances where competent counsel

very likely could not render assistance.")

Simply put, the cumulative effect of counsel's errors—no opening statement

at all, failure to cross examine numerous state witnesses, failure to file a dispositive

motion to suppress because of an incorrect assessment of rudimentary Fourth

Amendment law, failure to move for a judgment of acquittal with any specificity at

all, which might have led to an "Anders" brief being filed later—rendered his

entire trial constitutionally infirm, depriving him of his Sixth Amendment right to

counsel. Certainly, the effect of cumulative errors can "deny to defendant the fair

and impartial trial that is the inalienable right of all litigants." *Brooks v. State*, 918

So. 2d 181, 202 (Fla. 2005) (quoting *Jackson v. State,* 575 So. 2d 181, 189 (Fla.

1991)); *see also McDuffie v. State,* 970 So. 2d 312, 328 (Fla.

2007).

Certainly, courts have found that the failure to provide any tactical reason

why no opening statement was done, coupled with other forms of ineffective

assistance, is reversible error. *United States v. Hammonds*, 425 F.2d 597 (D.C. Cir.

1970) (reversing conviction for new trial where trial counsel in failing to do an

opening statement and failed to cross examine two of the government's four

witnesses, and, among other things, failed to subject prosecution's case to

meaningful adversarial testing); *Pinnel v. Cauthron,* 540 F.2d 938 (8th Cir. 1976)

(reversing conviction for trial counsel's ineffectiveness where there was unexplained failure to give opening or closing statements).

In this case, it cannot be said there was overwhelming evidence of Willis's guilt. Indeed, his own similarly-looking brother was originally the police's primary suspect. (R2 88). The police even showed the brother's picture of the victim in a lineup, and they suspected the brother stole the car used in the Publix robbery. *Ibid.* Further, there was no identification of Willis as the gunman, or even being there, before trial by any witness, and there were no inculpatory statements from him or any other witnesses to Willis's involvement. The best evidence was the fingerprint on the abandoned getaway car, but that alone is not enough, especially when there is no way to tell when it was placed on the car. In this trial where Willis faced mandatory life in prison if convicted, the constitutional guarantee of the right to effective counsel must have real meaning. And thus, the errors cannot be viewed in isolation; cumulatively, they constitute a failure to subject the State's case to an adversarial testing. *See Suggs v. State,* 923 So. 2d 419, 441 (Fla. 2005). Willis asks this Court to grant his petition, set the matter for an evidentiary hearing, or issue a certificate of appealability.

Respectfully submitted,

/s/Aubrey Webb, Esq.
55 Merrick Way, Suite 212
Coral Gables, FL
FBN 0622915

305-461-1116

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing

pleading was electronically filed via the CM/ECF system on this 22nd day of

November 2023.

/s/Aubrey Webb, Esq.